**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Sylvie Forcier

   v.                                    Civil No. 13-cv-444-LM

Creditors Specialty
Service, Inc.

**REPORT AND RECOMMENDATION**

    Sylvie Forcier brought suit against Creditors Specialty

Service, Inc. ("CSS"), alleging claims arising out of telephone

calls that CSS made to her and to her son in an attempt to

collect a debt.  When CSS failed to appear, default was entered

against it.  See Doc. no. 14.  Before the court for a Report and

Recommendation is Forcier's motion for default judgment pursuant

to Federal Rule of Civil Procedure 55(b)(2).  For the reasons

that follow, the court recommends that Forcier's motion be

granted in part.

**Standard of Review**

    After default is entered and when the amount at issue is

not a sum certain, "the party must apply to the court for a

default judgment."  Fed. R. Civ. P. 55(b)(2); see also KPS &

Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir.

2003).  "Although a defaulting party admits the factual basis of

the claims asserted against it, the defaulting party does not admit the legal sufficiency of those claims."  10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2013).  To recover on a motion for default judgment, "[t]he claimant must state a legally valid claim for relief."  Id.; see also Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002).  Therefore, before entering default judgment, the court must determine whether the admitted facts state actionable claims.  See Hop Hing Produces Inc. v. X & L Supermarket, Inc., No. CV 2012-1401(ARR)(MDG), 2013 WL 1232919, at *2 (E.D.N.Y. Mar. 4, 2013); E. Armata, Inc. v. 27 Farmers Market, Inc., No. 08-5212 (KSH), 2009 WL 2386074, at *2 (D.N.J. July 31, 2009).

## Discussion

Forcier seeks statutory damages, as well as costs and attorney's fees under: (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. (Counts I – VIII); (2) the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227 (Count IX); (3) New Hampshire's Unfair, Deceptive, or Unreasonable Collection Practices Act ("UDUCPA"), N.H. Rev. Stat. Ann. ("RSA") ch. 358-C (Counts X – XII); and (4) New Hampshire's Consumer Protection Act ("CPA"), RSA ch. 358-A

(Counts XIII, XIV, and XVI).  Forcier also seeks actual damages
for her claim of invasion of privacy (Count XV).

By virtue of its default, CSS concedes the following facts
alleged in the complaint:  (i) Forcier is a "consumer," (ii)
Forcier owed a "debt," and (iii) CSS is a "debt collector," all
within the meaning of the FDCPA and the UDUCPA.[1]  CSS further
concedes the allegation in the complaint that it communicated
with Forcier in an attempt to collect the debt.  In addition,
CSS admits that it called Forcier both at home and at work, and
that CSS received a letter from Forcier dated April 1, 2013,
asking it not to contact her again.  The complaint alleges
details about only five calls:

- "Defendant called the Plaintiff's son and left a message in
  connection with the collection of the debt on at least
  March 26, 2013." Compl. ¶ 23;

- "Defendant contacted the consumer on June 24, 2013 at 9:14
  pm through the phone."  Id. ¶ 28;

- CSS left three voicemail messages on Forcier's phone, and
  although the complaint includes the content of the
  messages, the dates of the messages are not provided.  See

---

[1] Other than that the debt meets the relevant statutory
definitions, the complaint includes no factual allegations
regarding the debt itself.

id. ¶¶ 60-62.

Forcier's motion for default judgment does not address any of her claims or allegations, and instead discusses only issues related to CSS's attorney and his failure to appear in this action.  At the damages hearing, Forcier testified briefly concerning CSS's conduct and her resulting injury.

A.   Claims Under the FDCPA

Forcier alleges eight violations of the FDCPA.  "In order to prevail on an FDCPA claim, a plaintiff must prove that: 1) the plaintiff has been the object of collection activity arising from consumer debt, 2) the defendant is a debt collector as defined by the FDCPA, and 3) the defendant has engaged in an act or omission prohibited by the FDCPA."  Halsey v. Litton Loan Servicing, No. 12-cv-511-PB, 2013 WL 3754919, at *3 (D.N.H. July 13, 2013) (internal quotation marks and citations omitted).  As discussed above, the complaint adequately alleges, and CSS has admitted, the first two elements.  Therefore, the court must determine whether Forcier's FDCPA claims sufficiently allege that CSS engaged in an act or omission prohibited by the statute.  Forcier's FDCPA claims are set forth in Counts I – VIII.

1.   <u>Count I - § 1692d(5)</u>

In Count I of the complaint, Forcier alleges that CSS violated § 1692d(5) by calling her on the telephone repeatedly with the intent to annoy, abuse, and harass her.  Section 1692b(5) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (5) Causing a telephone to ring or engaging any person in a telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

§ 1692d(5).  In determining whether a defendant's conduct violated § 1692d(5), "courts weigh and consider a number of factors, including the frequency, pattern, and nature of the calls . . . ."  <u>Finney v. MIG Capital Mgmt., Inc.</u>, No. 2:13-02778, 2014 WL 1276159, at *11 (S.D. W.Va. Mar. 27, 2014); <u>see also</u> <u>McVey v. Bay Area Credit Serv.</u>, No. 4:10-CV-359-A, 2010 WL 2927388, at *2-*3 (N.D. Tex. July 26, 2010).

Forcier alleges in the complaint that CSS contacted her "through the phones in a repetitive and continuous manner," including "twice a day on several occasions."  Compl. ¶¶ 16-17. She also alleges that CSS "made these calls with intent to annoy, abuse or harass" her.  <u>Id.</u> ¶ 19.  Forcier's allegations

largely track the statutory language, and are insufficient to support the claim.

Allegations that CSS called Forcier in a repetitive and continuous manner "are the type of threadbare recitals and conclusory statements that the Supreme Court sought to prevent in [Ashcroft v. Iqbal, 556 U.S. 662 (2009)]." Amaya v. Pollack & Rosen, P.A., No. 09-21137-CIV, 2010 WL 724451, at *4 (S.D. Fla. Feb. 25, 2010) (Allegations that the defendant "caus[ed] the telephone to ring repeatedly and continuously" were conclusory and could not support a § 1692d(5) claim.).[2] "While such conduct may be consistent with liability under the FDCPA, it is insufficient 'factual content [to] allow [] the court to draw the reasonable inference that [CSS] is liable for the misconduct alleged.'" Parker v. Barclays Bank Del., No. CV-10-5096-RMP, 2011 WL 2709407, at *3 (E.D. Wash. July 12, 2011) (quoting Iqbal, 556 U.S. at 678); see also Clemente v. IC Sys., Inc., No. 10-cv-569-JAM-EFB, 2010 WL 3855522, at *1-*2 (E.D.

---

[2] Although Iqbal addressed the standard on a motion to dismiss, when considering whether a plaintiff has stated a legally valid claim for relief for purposes of a default judgment, the court employs "the same standard a plaintiff must meet to defeat a motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure." NeighborCare of N.H., LLC v. New Hope Healthcare Sys.-Bedford, LLC, No. 13-CV-14-SM, 2013 WL 5739084, at *3 (D.N.H. Oct. 21, 2013) (citing Young v. Wells Fargo Bank, N.A., 717 F.3d 223, 241 n.16 (1st Cir. 2013)).

Cal. Sept. 29, 2010).

Forcier's allegation that CSS called her "twice a day on several occasions," while not conclusory, is not sufficient to state a claim under § 1692d(5).  Such an allegation does not provide enough detail as to the frequency, pattern, and nature of CSS's calls to make out a claim under § 1692d(5).[3]  See Tamayo v. Am. Coradious Int'l, L.L.C., No. 11-6549 (JLL), 2011 WL 6887869, at *3 (D.N.J. Dec. 28, 2011) ("Without more facts regarding the nature and extent of any harassing phone calls, the patterns of such calls, or the substance of any representations made during such calls, the Court cannot find that Plaintiff's claim under § 1692d(5) was sufficiently pled."); see also Brooks v. Flagstar Bank, FSB, No. 11-67, 2011 WL 2710026, at *7 (E.D. La. July 12, 2011); cf. Harmon v. Virtuoso Sourcing Grp. LLC, No. 2:11-cv-334, 2012 WL 4018504, at *4 (S.D. W.Va. Sept. 12, 2012) (granting default judgment under § 1692d(5) where plaintiff attached call log to complaint showing that defendant called twenty times within a ten day period and increased the frequency of the calls after the

---

[3] Although not specifically included in the section of the complaint concerning Count I, Forcier's allegations concerning the five specific calls mentioned above similarly do not provide enough details as to the frequency or pattern of the calls to make out a claim under § 1692d(5).

plaintiff asked the defendant to stop calling).

In addition, although Forcier alleges that CSS made calls with the intent to annoy, abuse, and harass her, "[a]lleging that the Defendant harassed and abused Plaintiff is merely a legal conclusion couched as a factual allegation." Quander v. Hillcrest, Davidson, and Assoc. LLC, No. RDB-12-1932, 2012 WL 6727141, at *3 (D. Md. Dec. 27, 2012) (internal quotation marks and citation omitted); see also Abdallah v. Bain Capital LLC, No, 12-12027-DPW, 2013 WL 3491074, at *2 n.2 (D. Mass. July 9, 2013) (allegations of intent without further factual enhancement are "conclusory allegations").  While a defaulting party accepts as true all factual allegations against them, "the court need not accept the moving party's legal conclusions, because . . . a party in default does not admit mere conclusions of law." Hoover v. A & S Collection Assoc., Inc., No. 2:13-CV-05852, 2014 WL 2711036, at *2 (D.N.J. June 16, 2014) (internal quotation marks and citations omitted); see also Prescription Containers, Inc. v. Cabiles, No. 12 Civ. 4805(CBA)(VMS), 2014 WL 1236919, at *8 (E.D.N.Y. Feb. 14, 2014) ("legal conclusions are not accepted as true on default").  Therefore, Forcier's allegation that CSS called her with the intent to annoy, abuse, or harass her is not entitled to be accepted by the court.

Accordingly, Count I of the complaint does not state an actionable claim because Forcier has not alleged sufficient facts to entitle her to relief.

2.   Count II - Section 1692c(b)

Forcier alleges in Count II that CSS called her son and left a message in connection with the debt.  She contends that the act of leaving the message constitutes a violation of § 1692c(b).  Section 1692c(b) provides in relevant part as follows:

(b) Communication with third parties

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.[4]

§ 1692c(b).  Thus, § 1692c(b) proscribes a debt collector's communications with third parties in connection with the collection of a debt unless that communication is otherwise permitted under § 1692b.  Section 1692b allows a debt collector to communicate with third parties for the purpose of acquiring location information about a consumer as long as the debt

---

[4] The FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  § 1692a(2).

collector follows specific guidelines, including "not stat[ing] that such consumer owes any debt." § 1692b(2).

Section 1692c(b) is broadly construed.  See Blair v. Sherman Acquisition, No. 04 C 4718, 2004 WL 2870080, at *3 (N.D. Ill. Dec. 13, 2004); see also Strouse v. Enhanced Recovery Co., L.L.C., 956 F. Supp. 2d 627, 634 (E.D. Pa. 2013).  Courts have held that "debt collectors violate § 1692c(b) by harassing unobligated family members and by leaving messages on answering machines that children and parents could hear."  Strouse, 956 F. Supp. 2d at 634 (citing FTC v. Check Enforcement, No. CIV. A. 03-2115(JWB), 2005 WL 1677480, at *8 (D.N.J. July 18, 2005)); see also Miller v. Prompt Recovery Servs., Inc., No. 5:11CV2292, 2013 WL 3200659, at *11-*12 (N.D. Ohio June 24, 2013).

Forcier alleges that CSS called her "son and left a message in connection with the collection of the debt on at least March 26, 2013."  Compl. ¶ 23.  She further alleges that the message "disclosed the existence of the debt" to her son.  Id. ¶ 24. These allegations, admitted as true by CSS because of its default, are sufficient to show that CSS communicated with a third party, and that such communication was not allowed under § 1692b.[5]  Accordingly, the complaint asserts a claim for relief

---

[5] Although Forcier did not allege whether CSS contacted her son

under § 1692c(b), and Forcier is entitled to default judgment on Count II.

3.  <u>Count III - § 1692c(a)(1)</u>

In Count III of the complaint, Forcier asserts a claim under § 1692c(a)(1).  That section provides that a debt collector may not communicate with a consumer:

> At any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer.  In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location.

§ 1692c(a)(1).

The complaint alleges that CSS "contacted [Forcier] on June 24, 2014 at 9:14 pm through the phone."  Compl. ¶ 28.  It also alleges that CSS "had no knowledge that calling at such a late hour would be convenient for" Forcier.  <u>Id.</u> ¶ 30.  These allegations, taken as true, state a claim for relief under § 1692c(a)(1).  <u>See, e.g.,</u> <u>Pillar v. Takhar Grp. Collection Servs., Ltd.</u>, No. 12-CV-355A (Sr.), 2012 WL 6209755, at *2 (W.D.N.Y. Nov. 21, 2012) ("[I]t is a violation of 15 U.S.C. §

---

for the purpose of acquiring location information about her, because she alleged that the phone message disclosed to her son the existence of her debt, § 1692b does not permit the communication.

1692c(a)(1) to telephone a debtor after 9:00 p.m. . . . .").
Accordingly, Forcier is entitled to default judgment on Count
III.

     4.   <u>Counts IV and V - § 1692e</u>

     In Counts IV and V of the complaint, Forcier asserts claims
under § 1692e.  Section 1692e prohibits a debt collector from
using "any false, deceptive, or misleading representation or
means in connection with the collection of any debt."  § 1692e.
The sixteen subsections of § 1692e set forth a non-exhaustive
list of practices that fall within this ban.  These subsections
include: "(3) The false representation or implication that any
individual is an attorney or that any communication is from an
attorney" and "(5) The threat to take any action that cannot
legally be taken or that is not intended to be taken."  §§
1692e(3) & (5).

     a.   <u>Count IV</u>

     In Count IV of the complaint, Forcier alleges that CSS
falsely implied in a phone call that it was the legal department
of St. Mary's Bank in connection with trying to collect a debt.
<u>See</u> Compl. ¶¶ 35-38.  Although Forcier does not plead the claim
under § 1692e(3), her allegation is understood to assert a
violation of that subsection.  <u>See</u> <u>Pollard v. Law Office of</u>

Mandy L. Spaulding, 967 F. Supp. 2d 470, 478 n.6 (D. Mass. 2013)
("Although plead under the general ban in section 1692e . . .,
this allegation is perhaps best characterized as a violation of
subsection (3), which prohibits the false representation that a
collection letter is a communication . . . from an attorney."
(internal quotation marks and citation omitted)).

"[F]or FDCPA purposes, [a communication] is to be viewed
from the perspective of the hypothetical unsophisticated
consumer." Pollard v. Law Office of Mandy L. Spaulding, 766
F.3d 98, 103 (1st Cir. 2014). This standard is similar to the
"least sophisticated consumer" standard employed by the majority
of circuits. Id. at 103 n.4; see also Waters v. J.C.
Christensen & Assoc., Inc., No. 08-11795-NG, 2011 WL 1344452, at
*8 (D. Mass. Mar. 4, 2011) ("[D]ifferentiating between the least
sophisticated consumer and the unsophisticated consumer
standards would involve the splitting of split hairs." (internal
quotation marks and citation omitted)). "The standard protects
all consumers, including the inexperienced, the untrained, and
the credulous." Pollard, 766 F.3d at 103.

CSS's phone call falsely representing that it was from St.
Mary's legal department is sufficient to give the hypothetical
unsophisticated consumer the impression that the communication

is from an attorney.  See Rosenau v. Unifund Corp., 539 F.3d

218, 223-24 (3d Cir. 2008) ("[I]t is possible that a debtor

receiving a collection letter from Unifund['s Legal Department]

could reasonably infer that the Legal Department contains

attorneys who played a role in writing or sending the letter.");

see also Crespo v. Brachfeld Law Grp., No. 11-60569-CIV, 2011 WL

4527804, at *4 (S.D. Fla. Sept. 28, 2011).[6]  Therefore, Forcier

is entitled to default judgment on Count IV.

     b.   Count V

Forcier alleges in Count V of the complaint that CSS

violated § 1692e(5).[7]  The complaint alleges that during one

collection call, CSS "threatened the Plaintiff in an attempt to

collect the alleged debt by threatening adverse credit reporting

activity if some action was not taken 'by 5 pm.'"  Compl. ¶ 41.

The complaint also alleges that the representation was intended

---

[6] Two district court cases in the Second Circuit have reached the
opposite conclusion and held that a call indicating that it was
from a legal department or a law firm does not violate §
1692e(3) unless the caller states or implies that he or she is
an attorney.  See Nicholson v. Forster & Garbus LLP, No. 11-CV-
524, 2013 WL 2237554, at *3 (E.D.N.Y. May 17, 2013); Ostrander
v. Accelerated Receivables, No. 07-CV-827C, 2009 WL 909646, at
*6 (W.D.N.Y. Mar. 31, 2009).  In view of case law holding to the
contrary and the hypothetical unsophisticated consumer standard,
the court does not find those two cases persuasive.

[7] The heading in Count V references § 1692e.  The allegations
contained within Count V reference § 1692e(5).  See Compl. ¶¶
40-44.

to create a false sense of urgency and that CSS did not intend to take that action.  Accepting Forcier's factual allegations as true, CSS violated the FDCPA by falsely representing that it would cause the debt to be placed on Forcier's credit report if she did not take action by 5:00 p.m.  See Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1064 (9th Cir. 2011) (threatening to make a negative credit report when the defendant did not intend to do so constituted a violation of section 1692e(5)); see also Brown v. Card Serv. Ctr., 464 F.3d 450, 454-55 (3d Cir. 2006).  Therefore, Forcier is entitled to default judgment on Count V.

 5. Count VI – § 1692c

 Forcier alleges in Count VI that CSS violated the FDCPA by making several calls to her cellular phone while she was at work despite receiving a letter from her asking CSS not to contact her any further.  She claims that this conduct violates § 1692c(a)(3).[8]

 Section 1692c(a)(3) prohibits communication by a debt collector with a consumer "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such a

---

[8] As in Count V, the heading of Count VI references § 1692c, but the allegations contained within Count VI reference § 1692c(a)(3).  See Compl. ¶¶ 47-51.

communication." § 1692c(a)(3).  The complaint alleges that
Forcier "sent a letter to the Defendants [sic] on April 1, 2013
which contained the following language in bold type face: 'Do
not contact me by Telephone, or any third parties regarding the
debt.'"  Compl. ¶ 48.  It further alleges that CSS received the
letter on April 5, 2013, and that it continued to call Forcier
on her cellular phone while she was at work after that date.
Id. ¶¶ 49-50.

Forcier does not allege that her employer prohibited her
from receiving calls from a debt collector while she was at
work.  Even if she had made such an allegation, she does not
allege that CSS knew or had reason to know that her employer
prohibited her from receiving such communications.  Therefore,
Forcier has not made out a claim under § 1692c(a)(3).  See Purdy
v. Richland Holdings, Inc., No. 2:11-cv-00211-LDG (PAL), 2012 WL
1019115, at *2 (D. Nev. Mar. 23, 2012) ("As Purdy failed to
allege any fact that could even conceivably support an inference
that Richland Holdings knew or should have known that Purdy's
employer prohibited her from receiving a telephone call in
connection with a debt collection, the Court must dismiss [the §
1692c(a)(3)] claim for relief . . . ."); see also Johnson v.
Stephens & Michaels Assoc., Inc., No. 1:13 CV 2153, 2014 WL

2506253, at *3 (N.D. Ohio June 3, 2014); <u>Karp v. Fin. Recovery</u>
<u>Servs., Inc.</u>, No. A-12-CA-985 LY, 2013 WL 6734110, at *5-*6
(W.D. Tex. Dec. 18, 2013).

     6.   <u>Count VII - § 1692g(a)</u>

     Forcier's next FDCPA claim arises under § 1692g(a).  That
section provides:

> Within five days after the initial communication
> with a consumer in connection with the collection of
> any debt, a debt collector shall, unless the following
> information is contained in the initial communication
> or the consumer has paid the debt, send the consumer a
> written notice containing –
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is
> owed;
>
> (3) a statement that unless the consumer, within
> thirty days after receipt of the notice, disputes the
> validity of the debt, or any portion thereof, the debt
> will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the
> debt collector in writing within the thirty-day period
> that the debt, or any portion thereof, is disputed,
> the debt collector will obtain verification of the
> debt or a copy of a judgments against the consumer and
> a copy of such verification or judgment will be mailed
> to the consumer by the debt collector; and
>
> (5) a statement that upon the consumer's written
> request within the thirty-day period, the debt
> collector will provide the consumer with the name and
> address of the original creditor, if different from
> the current creditor.

§ 1692g(a).

In paragraph fifty-three of her complaint, Forcier alleges that she never received the "required written notice" from CSS containing the information listed in §§ 1692g(a)(1)-(5). Forcier, however, makes no allegations about her initial communication with CSS, including whether it was oral or written.  Her "failure to make factual allegations about [her] initial communication, in turn, is a significant omission, because a failure to provide the written notice required by § 1692g(a) is a violation of the FDCPA <u>only</u> if the information described in §§ 1692g(a)(1)-(5) was not provided to the consumer in the initial communication."  <u>Potvin v. Paul Law Office, PLLC</u>, No. 11-cv-308-LM, 2012 WL 1903254, at *6 (D.N.H. May 25, 2012). "Absent an allegation that [CSS] did not provide the required information in its initial communication, [Forcier has] failed to state a claim under § 1692g(a)."  <u>Id.</u>

   7.   <u>Count VIII - § 1692e(11)</u>

Forcier's final FDCPA claim arises under § 1692e(11), which provides, in relevant part, as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if

the initial communication with the consumer is oral,
in that initial oral communication, that the debt
collector is attempting to collect a debt and that any
information obtained will be used for that purpose,
and the failure to disclose in subsequent
communications that the communication is from a debt
collector . . . .

§ 1692e(11).

Forcier's complaint identifies three phone messages from
CSS that she claims "did not provide the statutorily required
notice." Compl. ¶ 63. They are as follows:

This message is for Silvie Forcier. This is George
Gormez calling from the legal department of CSS for
Saint Mary's Bank. Silvia [sic] I still have not
heard from you uh I'm trying to get the payment for
the month of March[.] [M]y phone number here is 661-
269-0100.

Hi good morning Sylvie this is George calling with CSS
for [S]aint Mary's Bank[.] Uh again I have the file
with me now I would like to go over the uh uh
interest[.] [Y]ou said you had some documents from my
office[.] [U]h keep in mind the arrangement has been
changed a couple of times and you know you got
(unintelligible) so ya give me a call back and [we'll]
go over the wording on the letter that you received
from our office[.] [P]hone number is 661-260-0100
extension 211.

This is a message for Silvie Forcier[.] [M]y name is
Lennet and I'm calling from CSS[.] [P]lease do give me
a call back in regards to your account here[.] I'm at
800 277 8660 so we can resolve this matter here in
California 800 277 8660.

Id. ¶¶ 60-62.

Although Forcier quotes the three messages, she does not

19

"identify or describe the initial communication from [CSS], which is the factual baseline for determining liability under § 1692e(11)." Potvin, 2012 WL 1903254, at *5. Assuming that Forcier intended to allege that these three messages were subsequent communications that violated § 1692e(11) because they did not specifically identify CSS as a debt collector, those allegations are insufficient. "The intent behind 15 U.S.C. § 1692e(11) is to make it apparent to debtors that the request for payment that they receive is from a debt collector." Berger v. Northland Grp., Inc., 886 F. Supp. 2d 59, 64 (D. Mass. 2012). Forcier does not allege that she was unaware that CSS was a debt collector when she received these three communications, and each of the three messages suggests that Forcier had had prior interactions with CSS concerning the debt. Although the term "debt collector" is not used in any of the messages, "Congress did not mandate that the exact words 'debt collector' be included in the" communication. Sayyed v. Wolpoff & Abramson, LLP, 733 F. Supp. 2d 635, 641 (D. Md. 2010). Therefore, Forcier has not alleged a claim under § 1692e(11).

Accordingly, Forcier is entitled to default judgment on her FDCPA claims alleged in Counts II, III, IV, and V, but not on her FDCPA claims alleged in Counts I, VI, VII, or VIII.

B.   <u>Claim Under the TCPA</u>

Forcier alleges in Count IX that CSS violated the TCPA by using an automated dialing system.  At the damages hearing, Forcier stated that she was withdrawing the claim without prejudice.  Therefore, Forcier is not entitled to default judgment on Count IX.

C.   <u>Claims Under the UDUCPA</u>

Forcier alleges three claims under the UDUCPA.  The UDUCPA provides, as a general prohibition, that "[n]o debt collector shall collect or attempt to collect a debt in an unfair, deceptive or unreasonable manner as defined in this chapter." RSA 358-C:2.  Similar to a claim under the FDCPA, in order to recover under the UDUCPA, a plaintiff must show that 1) the plaintiff has "been the object of collection activity arising from a consumer debt"; 2) the defendant is a debt collector as defined by the UDUCPA, and 3) "the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the" UDUCPA.  <u>Pruden v. CitiMortgage, Inc.</u>, No. 12-cv-452-LM, 2014 WL 2142155, at *8 (D.N.H. May 23, 2014) (internal quotation marks and citations omitted).

As with Forcier's FDCPA claims, the complaint sufficiently

alleges the first two elements.  Therefore, the court must
determine whether Forcier's UDUCPA claims adequately allege that
CSS engaged in an act or omission prohibited by the statute.
Forcier's UDUCPA claims are set forth in Counts X – XII.

    1.   <u>Count X - RSA 358-C:3, I(a)</u>

    Forcier's first claim under the UDUCPA alleges that CSS
violated RSA 358-C:3, I(a) by calling her several times a day
and on multiple occasions "with the intent to annoy, abuse or
harass" her.  Compl. ¶ 82.  RSA 358-C:3, I(a) contains similar
language to § 1692d(5), on which Count I is based.  The section
prohibits a debt collector from communicating or attempting to
communicate with the debtor "[b]y causing a telephone to ring or
engaging any person in a telephone conversation repeatedly or
continuously or at unusual times or at times known to be
inconvenient with the intent to abuse, oppress or harass any
person at the called number . . . ."  RSA 358-C:3, I(a).

    Forcier's allegations in support of her UDUCPA claim in
Count X are nearly identical to those in support of her FDCPA
claim in Count I.  She alleges that CSS contacted her "through
the phones in a repetitive and continuous manner," Compl. ¶ 80,
and that CSS "made these calls with intent to annoy, abuse or

harass" her, id. ¶ 83.[9]  Forcier's claim is too conclusory and too lacking in factual allegations to adequately state a claim on which relief can be granted.  See Potvin, 2012 WL 1903254, at *6.  Accordingly, Forcier is not entitled to default judgment on Count X.

    2.    Count XI – RSA 358-C:3, IV

    Forcier alleges that CSS violated RSA 358-C:3, IV by contacting her son and leaving a message in regard to the debt. The statute on which Forcier relies provides:

> For the purposes of this chapter, any debt collection or attempt to collect a debt shall be deemed unfair, deceptive or unreasonable if the debt collector:
>
> IV.   Communicates or threatens to communicate, except by proper judicial process, the fact of such debt to a person other than the person who might reasonably be expected to be liable therefor; provided that the provisions of this paragraph shall not prohibit a debt collector from:
>
> (a) Communicating information relating to a debt to a person residing with the debtor and reasonably believed to be a relative or family member over the age of 18 . . . [or]
>
> (b) From leaving a message at the residence of the debtor containing no information other than a request that the debtor contact the debt collector

_____

[9] The only difference in Forcier's allegations in Count I and Count X is that she alleges in Count I that CSS called her "twice a day on several occasions," Compl. ¶ 17, and alleges in Count X that CSS called her "multiple times a day on several occasions," id. ¶ 81.

about the debt.

RSA 358-C:3, IV.

Forcier bases this claim on the March 26, 2013, phone message that CSS left with her son, which was also the basis of her FDCPA claim in Count II.  As discussed in the section addressing Count II, the only detail concerning the message provided in the complaint is that the message "disclosed the existence of the debt" to her son.  Compl. ¶ 24.

Unlike § 1692c(b) on which Count II is based, the UDUCPA specifically allows a debt collector to communicate with the debtor's family member if the family member is over the age of eighteen and resides with the debtor.  See RSA 358-C:3, IV(a). The UDUCPA also allows a debt collector to leave a message at the debtor's residence requesting that the debtor contact the debt collector regarding the debt.  See id. at IV(b).  Forcier does not allege in the complaint whether her son resides with her or is over, or could reasonably be believed to be over, the age of eighteen.  In addition, other than disclosing the existence of the debt, Forcier does not allege any specifics regarding the content of the message.  Therefore, the allegations in the complaint do not make out a claim under RSA

358-C:3, IV.[10]  Accordingly, Forcier is not entitled to default judgment on Count XI.

    3.  Count XII – RSA 358-C:3, I(c)

    Forcier next alleges that CSS violated RSA 358-C:3, I(c), which prohibits a debt collector from:

> I. Communicat[ing] or attempt[ing] to communicate with the debtor, orally or in writing:
>
> . . .
>
> (c) At the debtor's place of employment if said place is other than the debtor's residence, provided that:
>
>     . . .
>
>     (2) a debt collector may phone the debtor at his place of employment if he is unable to contact the debtor at his residence, provided that:
>
>         A.   the debtor does not inform the debt collector that he does not wish the debt collector to communicate or attempt to communicate with him at his place of employment; and
>
>         B.   the debt collector shall not inform the employer of the nature of the call unless asked by the employer; and
>
>         C.   in no event shall the debt collector make more than one phone call per month to the debtor at his place of employment unless the debtor affirmatively indicates in writing that he desires the debt collector to call him at his place of employment . . . ."

---

[10] Forcier alleges simply that "[n]o statutory exception applies to th[e] communication[]."  Compl. ¶ 89.  That allegation is conclusory and not entitled to be credited.

RSA 358-C:3, I(c).

Forcier alleges that she sent CSS a letter on April 1, 2013, which told it not to contact her or any third parties regarding the debt.  She further alleges that after receipt of the letter, CSS "continued to make calls to [her] cellular telephone, while at work, in an attempt to collect the debt."  Compl. ¶ 94.

There is a lack of New Hampshire case law interpreting RSA 358-C:3, I(c).  Even if Forcier's letter were sufficient notice, her claim would still fail because she has not identified any specific communications, let alone specific communications while she was at work, after the date of the letter.  Although the complaint alleges generally that Forcier received calls at work after sending the letter, "[b]ecause [Forcier has] not adequately alleged any communication from [CSS] after April 1, [2013] . . . [she has] failed to state a claim" under RSA 358-C:3, I(c).  Potvin, 2012 WL 1903254, at *4.

Accordingly, Forcier has failed to state a claim under the UDUCPA.  Forcier is not entitled to default judgment on Counts X – XII.

D.   Claims Under the CPA

Forcier brings three claims under the CPA.  The CPA

provides: "It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  RSA 358-A:2.  Forcier's CPA claims are set forth in Counts XIII, XIV, and XVI.

    1.   Count XIII – RSA 358-A via RSA 358-C

Forcier bases her first CPA claim on RSA 358-C:4, VI,[11] which states that "[a]ny violations of the provisions of [the UDUCPA] shall also constitute an unfair and deceptive act or practice within the meaning of RSA 358-A:2 and may be enforced by the attorney general pursuant to RSA 358-A."  RSA 358-C:4, VI.  As other judges in this district have noted, RSA 358-C:4, VI's plain language "appears to limit enforcement to the attorney general."  Porter v. Countrywide Home Loans, Inc., No. 13-cv-429-JD, 2014 WL 4450043, at *3 n.2 (D.N.H. Sept. 10, 2014); see also Himes v. Client Servs. Inc., 990 F. Supp. 2d 59, 65 n.4 (D.N.H. 2014).  As in Porter and Himes, the court need not decide whether RSA 358-C:4, VI provides a private right of action because, as Forcier's "UDUCPA claims fail for the reasons discussed above, her CPA claim[] [based on 358-C:4] necessarily fail[s] as well."  Himes, 990 F. Supp. 2d at 65; see also

---

[11] The complaint cites RSA 358-C:4, IV, rather than RSA 358-C:4, VI.  That appears to by a typographical error.

Porter, 2014 WL 4450043, at *3.

Accordingly, Forcier is not entitled to default judgment on Count XIII.

2.   Count XIV – RSA 358-A:2

Forcier alleges that all of CSS's actions in trying to collect the debt constitute unfair or deceptive acts or practices under the CPA and, therefore, entitle her to relief under the statute.  The court is not aware of any statute or case law supporting the theory that a violation of the FDCPA is a per se violation of the CPA.[12]  Because the New Hampshire Supreme Court has not linked the two statutes, the court is reluctant to expand state law, particularly in the context of a default judgment.  See U.S. Liab. Ins. Co. v. Selman, 70 F.3d 684, 693 (1st Cir. 1995) ("The organic growth of state law is best left to state courts, particularly in areas that traditionally have been committed to, and regulated by, the states."); see also Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 402 (1st Cir. 2005).  The specific allegations in

---

[12] In contrast both case law and Massachusetts regulations make it clear that "[a] violation of the FDCPA constitutes a per se violation of [the Massachusetts Consumer Protection Act]." French v. Corporate Receivables, Inc., 489 F.3d 402, 403 n.1 (1st Cir. 2007); see also 940 Code of Mass. Reg. § 3.16(4) ("[A]n act or practice is a violation of [the Massachusetts Consumer Protection Act] if: (4) It violates . . . Federal consumer protection statutes . . . .").

the complaint concerning CSS's conduct are insufficient to state a claim for violation of the CPA.  See, e.g., Himes v. Client Servs., Inc., No. 12-CV-321-PB, 2013 WL 1737153, at *4 (D.N.H. Apr. 22, 2013).

       3.   Count XVI – RSA 358-A via 349:1

Forcier next alleges that CSS is not registered with the New Hampshire Secretary of State's office in violation of RSA 349:1.  She alleges that CSS's failure to register constitutes an unfair and deceptive act or practice under the CPA.

RSA 349:1 provides: "Every sole proprietor doing business in this state under any name other than the sole proprietor's own name, and every partnership, trust or association doing business in this state shall register the trade name of such business, trust or association in the manner provided in RSA 349:5 and 349:6."  RSA 349:5 requires registration with the New Hampshire Secretary of State, and RSA 349:6 provides the "effect of registration."

Forcier alleges that CSS "is a corporation," rather than a sole proprietor, partnership, trust, or association.  Compl. ¶ 6.  Therefore, Forcier has not alleged that RSA 349:1 applies to CSS.  See RSA 349:1, II (setting forth entities to which RSA 349:1 does not apply, including certain corporations, limited

liability companies, and limited partnerships).  Even if RSA 349:1 did apply to CSS, it is difficult to see how the mere non-compliance with the statute, without more, could be the basis of a CPA claim.  Therefore, Forcier is not entitled to default judgment on Count XVI.

Accordingly, Forcier is not entitled to judgment on any of her claims under the CPA.

E.   Count XV - Invasion of Privacy

Forcier alleges in Count XV that CSS "invaded the peace and quiet enjoyment of [her] home through repeated phone calls to [her] phone . . .  [thereby] intrud[ing] upon the seclusion of the Plaintiff."  Compl. ¶¶ 112-113.  She also alleges that CSS "further cast [her] in false light by [CSS's] broadcast messages and/or contact with third parties."  Id. ¶ 114.

"'[I]nvasion of the right of privacy is not a single tort but consists of four distinct torts,' including '(1) intrusion upon the plaintiff's physical and mental solitude or seclusion; (2) public disclosure of private facts; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness.'"  Lovejoy v. Linehan, 161 N.H. 483, 485-86 (N.H. 2011) (quoting Hamberger v. Eastman, 106 N.H.

107, 109 (N.H. 1964)).  Forcier's complaint deals with the first
and third tort.

To succeed on a claim of invasion of privacy based upon the
intrusion of physical and mental solitude or seclusion, a
plaintiff must establish the "invasion of something secret,
secluded or private pertaining to the plaintiff." Hamberger,
106 N.H. at 110.  "It is only where the intrusion has gone
beyond the limits of decency that liability accrues." Fischer
v. Hooper, 143 N.H. 585, 590 (N.H. 1999).  "The intrusion may be
a physical invasion of the plaintiff's private space, such as
entry into a home, or may be a non-physical invasion, such as
the wiretapping of a private conversation." Wholelife
Chiropractic Clinic, Inc. v. Preferred Mut. Ins. Co., No. 94-
462-JD, 1995 WL 17201229, at *9 (D.N.H. Sept. 27, 1995).

Forcier's allegations do not demonstrate an intrusion that
has gone beyond the limits of decency.  Therefore, she has not
alleged a claim for invasion of privacy for intrusion on her
physical or mental solitude or seclusion.[13]

---

[13] The tort of invasion of privacy for intrusion on physical or
mental solitude is based on the Restatement (Second) of Torts §
652b.  Comment d to that section suggests that liability for the
tort could attach for repeated phone calls attempting to collect
a debt, but "only when the telephone calls are repeated with
such persistence and frequency as to amount to a course of
hounding the plaintiff, that becomes a substantial burden to his

Nor has Forcier alleged the third tort for publicity which placed her in a false light in the public eye.  Forcier alleges only a single communication from CSS that was not to her – the message her son received.  She does not allege that the message contained any false information, which is a required element of the tort.  See Wentworth-Douglass Hosp. v. Young & Novis Prof. Ass'n, Np. 10-cv-120-SM, 2011 WL 446739, at *6 (D.N.H. Feb. 4, 2011) ("While, as noted, the tort of false-light invasion of privacy has yet to be formally recognized under New Hampshire's common law, the state's highest court has recognized that such a claim 'requires falsity or fiction.'" (quoting Hamberger, 106 N.H. at 111)).  Even if she had made such an allegation, the tort requires "publicity, which means that the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Philbrick v. eNom, Inc., 593 F. Supp. 2d 352, 381 (D.N.H. 2009).  The complaint references only one third party – Forcier's son – with whom CSS communicated regarding her debt.  Therefore, Forcier has failed to allege that CSS publicized her debt.

Accordingly Forcier is not entitled to default judgment for

existence . . . ."  The allegations in Forcier's complaint do not rise to that level.

her claim of invasion of privacy.

F.   <u>Summary</u>

Forcier is entitled to default judgment on four of her claims under the FDCPA, which are set forth in Counts II, III, IV, and V.  She is not entitled to default judgment on her any of her remaining claims.  Therefore, the court will assess damages under the FDCPA.

G.   <u>Damages and Attorney's Fees</u>

"The FDCPA provides that successful plaintiffs are entitled to actual damages, statutory damages of up to $1,000, and 'the costs of the action, together with a reasonable attorney's fee as determined by the court . . . .'"  <u>French</u>, 489 F.3d at 403 (quoting 15 U.S.C. § 1692k(a)(3)).  "An award of attorney's fees to successful plaintiffs under the FDCPA is obligatory."  <u>Id.</u>

Forcier seeks statutory damages and attorney's fees and costs.  She does not seek actual damages for her FDCPA claims.

1.   <u>Damages</u>

"[S]tatutory damages under the FDCPA are limited to $1,000 per lawsuit, not $1,000 per violation."  <u>Nelson v. Equifax Info. Servs., LLC</u>, 522 F. Supp. 2d 1222, 1238 (C.D. Cal. 2007); <u>see also</u> <u>Wright v. Fin. Serv. of Norwalk, Inc.</u>, 22 F.3d 647, 650-51 (6th Cir. 1994) (en banc); <u>Williams v. Pressler and Pressler,</u>

LLP, No. 11-7296 (KSH), 2013 WL 5435068, at *10 (D.N.J. Sept. 27, 2013); Stilz v. Global Cash Network, Inc., No. 10 CV 1998, 2010 WL 3975588, at *4 (N.D. Ill. Oct. 7, 2010).  "Whether statutory damages should be granted, and, if so, whether the full amount of $1,000 should be allowed, is committed to the discretion of the court.  In exercising that discretion, courts look to the nature of the violation.  If the violation is especially egregious, or if plaintiffs show that it was repeated and persistent, courts are more likely to award the full amount."  Manopla v. Bryant, Hodge and Assoc., LLC, No. 13-338 (JAP), 2014 WL 793555, at *6 (D.N.J. Feb. 26, 2014) (internal citations omitted).

As discussed above, Forcier is entitled to judgment on four of her counts under the FDCPA.  Because CSS has committed multiple violations of the FDCPA, the court recommends that the district judge award Forcier the maximum amount of $1,000 in statutory damages.  See Capaldi v. Am. Credit & Collections, LLC, No. 12-10254, 2014 WL 3925163, at *5 (E.D. Mich. Aug. 12, 2014).

2.  Attorney's Fees

An award of reasonable attorney's fees is typically calculated by the lodestar method in which the court multiplies

34

the hours productively spent by a reasonable hourly rate.
Spooner v. EEN, Inc., 644 F.3d 62, 67-68 (1st Cir. 2011).
"'Reasonable hourly rates will vary depending on the nature of
the work, the locality in which it is performed, the
qualifications of the lawyers, and other criteria.'"  Hutchison
ex rel. Julien v. Patrick, 636 F.3d 1, 16 (1st Cir. 2011).
(quoting United States v. One Star Class Sloop Sailboat, 546
F.3d 26, 38 (1st Cir. 2008)).  The determination of what
constitutes a "reasonable" fee is left to the court's
discretion.  de Jesus v. Banco Popular de P.R., 918 F.2d 232,
233-34 (1st Cir. 1990).

        The party seeking a fee award bears the burden of producing
materials to support the request.  Hutchison, 636 F.3d at 13.
"Appropriate supporting documentation includes counsel's
contemporaneous time and billing records and information
establishing the usual and customary rates in the marketplace
for comparably credentialed counsel."  Spooner, 644 F.3d at 68;
see also Bogan v. City of Boston, 489 F.3d 417, 426 (1st Cir.
2007)).

        Forcier filed a petition seeking attorney's fees in the
amount of $10,095.50 and $485.49 in costs.  She submitted
billing records itemizing a total of 34.9 hours of billable time

spent by her attorney and another attorney in his firm working on this case.  Doc. no. 17-2.  She seeks compensation at a rate of $275 per hour for 10 hours billed by an associate at the firm and compensation at a rate of $295 for 24.9 hours billed by her attorney, a partner.[14]

The $275 hourly rate for associate work and $295 hourly rate for partner work is supported by Forcier's submissions. See Doc. no. 17.  Forcier's attorney is a partner in a law firm with four years of experience handling consumer protection matters such as this one.  Id.  He typically bills at the hourly rate sought here, although he has received higher rates in more complicated matters.  Id.  Forcier has submitted documentation supporting her contention that her attorney's rates are consistent with an attorney with similar experience in a similar practice area.  Id.  In addition, Forcier's attorney's rates, albeit slightly lower at the time, have been found to be reasonable in similar cases.  See Allen v. Lindner & Assoc., PC, No. 12-10903-LTS, 2013 WL 1947265, at *1-*4 (D. Mass. May 8, 2013).  The court finds that $275 for associate work and $295 for partner work is a reasonable hourly rate in this case.

---

[14] Forcier waives her claim to an additional 9.7 hours worked by her attorney and the associate at her attorney's firm, which is described as "Non-billable Time Entries" in the billing records, in the interest of "billing discretion."

Although Forcier's attorney's rates are reasonable, there appear to be two billing entries that amount to purely administrative or clerical work, not attorney tasks.  These include: (i) .5 hours spent on August 1, 2013, to "Print final copy, sign, scan, fax [times 3], and mail out to Def. California address," and (ii) .1 hours spent on August 1, 2013, to "RE-Send Fax at Def. Req. – Alleged;y [sic] Only Received 1 page."  Doc. no. 17-2.  "Such tasks are not properly billed at an attorney's rate."  Allen, 2013 WL 1947265, at *2 (citing Lipsett v. Blanco, 975 F.2d 934, 940 (1st Cir. 1992)).  Therefore, the court will disallow the .6 hours identified above.

Accordingly, Forcier is entitled to recover $9,918.50 in attorney's fees and $485.49 in costs.


## Conclusion

For the foregoing reasons, the court recommends that the district judge: (1) grant default judgment to Forcier on Counts II, III, IV, and V; and (2) award Forcier $1,000 in damages, $9,918.50 in attorney's fees, and $485.49 in costs.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the

specified time waives the right to appeal the district court's

order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57

(1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617

F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by

objections to magistrate judge's report are subject to review by

district court; issues not preserved by such objection are

precluded on appeal).


                                    Andrea K. Johnstone
                              United States Magistrate Judge


October 24, 2014

cc:  John F. Skinner, III, Esq.